**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: KEYBANK CUSTOMER DATA SECURITY BREACH LITIGATION | MDL NO. 3056 |

**MOVANTS KAREN MARTIN'S AND MICHAEL MARTIN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION IN THE WESTERN DISTRICT OF PENNSYLVANIA**

Pursuant to 28 U.S.C. §1407 and JPML Rule 6.1(d), Movant Plaintiffs Karen Martin and Michael Martin (the "Movants") respectfully submit this reply memoranda in support of their Motion for Transfer and Centralization ("Motion") of all Related Actions to the Western District of Pennsylvania.

**I.   INTRODUCTION**

The parties do not dispute that §1407 centralization is appropriate here; the only dispute is over the transferee district. Movants' initial motion was not met with any opposition with regard to centralization. *See* ECF No. 1. All responding parties argued for centralization under §1407. *See* ECF No. 22 at 2-7; ECF No. 23 at 1; ECF No. 25 at 1; ECF No. 26 at 2; ECF No. 27 at 3; ECF No. 29 at 1; ECF No. 30 at 1. Moreover, since the Motion, two additional cases have been identified. *See Brouty v. KeyBank National Association, KeyCorp, and Overby-Seawell Company*, No. 1:22-cv-01885 (Northern District of Ohio); *Pittman v. KeyBank National Association, KeyCorp, and Overby-Seawell Company,* No. 2:22-cv-01513-RJC (Western District of Pennsylvania). Certain respondents have identified other cases that have not been filed against KeyBank as potentially related. *See Sheckard v. Overby-Seawell Company and Fulton Bank, N.A.*, No. 1:22-cv-03708-SDG (Northern District of Georgia); *West v. Overby-Seawell Co. and Fulton*

1

*Bank, N.A.*, No. 1:22-cv-03858-SDG (Northern District of Georgia).[1] As the Related Actions are still in their infancy, additional cases will likely continue to be filed, necessitating centralization. Movants submit that the common factual question in the Related Actions arise from the same facts that resulted in the KeyBank Data Breach that affected KeyBank National Association ("KeyBank"), KeyCorp (together with KeyBank, "Key") and Overby-Seawell Company ("OSC") (collectively, "Defendants"). KeyBank's data security measures, KeyBank's representations to its customers, and KeyBank's actions following the Data Breach will be relevant. The fact that KeyBank's vendor, OSC, may have caused the Data Breach does not shift the focus of liability away from KeyBank. Even if the Panel were to allow actions involving other financial institutions to be included as Related Actions, those facts would further support Movants' argument that there is no single center of gravity. Indeed, KeyBank is headquartered in Cleveland, Ohio, OSC is headquartered in Kennesaw, Georgia, and Fulton Bank is headquartered in Lancaster, Pennsylvania. Movants therefore submit that the Western District of Pennsylvania continues to be the most efficient as a centralized point for all interested parties to litigate.

## II.   ARGUMENT

### A. THE *KEYBANK DATA BREACH* ACTIONS SHOULD BE CENTRALIZED FOR PRE-TRIAL PURPOSES.

Since the parties do not dispute that centralization is appropriate here, the first question – whether the KeyBank Data Breach actions should be centralized at all – is one in which the MDL Panel has previously found to be warranted. *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (Where "actions stem from

---

[1] To the extent the Panel determines that these and other actions should be included as part of any centralization, such arguments weigh in support of centralization to the Western District of Pennsylvania as there is no one single center of gravity as the relevant parties whose customers were subject to this breach are located in multiple jurisdictions throughout the United States.

the same data breach, and there is significant overlap in the central factual issues, parties, proposed classes, and claims . . . . [a] single, multi-defendant MDL also will facilitate more efficient coordination . . . .").

There are many overlapping uses with this litigation that would be rendered more efficiently by having one court adjudicate the complex factual and legal issues surrounding this Data Breach. The common factual questions include: (1) Defendants' data security practices and whether they met industry standards; (2) how the unauthorized access occurred; (3) when Defendants knew or should have known of the breach; (4) the investigation into the breach; and (5) the alleged delay in disclosure of the breach by all Defendants. As a result, "[c]entralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect *to class certification; and conserve the resources of the parties, their counsel, and the judiciary.*" *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364 (J.P.M.L. 2020).[2] Thus, centralization would be warranted.

### B. CENTRALIZATION TO THE WESTERN DISTRICT OF PENNSYLVANIA WOULD BE MOST EFFICIENT.

As a preliminary matter, the first filed case is not dispositive as to where the Panel should centralize.[3] Moreover, the MDL Panel looks at a number of factors in determining where consolidated cases should be transferred, including: a transferee forum that is (1) not overtaxed with MDL cases; (2) has a related action pending on its docket; (3) has a judge with some degree

---

[2]   Unless otherwise noted, emphasis is added and citations are omitted throughout.

[3]   The "first-to-file rule" is a doctrine of federal comity, pursuant to which, "'when related cases are pending before two federal courts, the court in which the case was last filed *may* refuse to hear it if the issues raised by the cases substantially overlap.'" *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 307 (5th Cir. 2013) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)).

of expertise in handling the issues presented; and (4) is convenient for the parties. *See* MANUAL FOR COMPLEX LITIGATION, §22.33 (4th ed. 2004).

While some responses indicate that the Northern District of Georgia or Northern District of Ohio is not overtaxed with MDL proceedings, a closer look at the statistics favor the Western District of Pennsylvania.

First, while the Northern District of Georgia only has three (3) MDL proceedings pending, those include 3,644, 14, and 1,447 actions, respectively, for a grand total of 5,105 actions being presided over.[4]  Likewise, while the Northern District of Ohio has three (3) MDL proceedings pending, those include 241, 3,081, and 2 actions, respectively, for a total of 3,324 actions.[5]  On the other hand, the Western District of Pennsylvania has five (5) MDL proceedings pending, which include, 12, 32, 4, 342, and 60 actions, respectively, for a total of 450 actions.[6]  In terms of pending matters outside of MDL proceedings, the Western District of Pennsylvania is also the least overtaxed, allowing Judge Robert C. Colville to be able to provide sufficient time and resources for efficiency.  The Western District of Pennsylvania has 2,478 pending civil matters and 867 pending criminal matters. The Northern District of Ohio and the Northern District of Georgia, have 5,629 pending civil matters, 867 pending criminal matters, and 7,560 pending civil matters, 1,307 pending criminal matters, respectively.

In sum, the Western District of Pennsylvania is the least taxed District by volume, and an otherwise under-utilized district with regard to complex MDL matters.  The Western District of

---

[4]    *MDL Statistics Report – Distribution of Pending MDL Dockets by District*, U.S. Judicial Panel on Multidistrict Litig. (Oct. 14, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-14-2022.pdf.

[5]    *Id*.

[6]    *Id*.

Pennsylvania would be able to provide the most efficiency in presiding over this MDL litigation, should it be centralized there.

### C. THERE IS NO CENTER POINT OF GRAVITY AND THE WESTERN DISTRICT OF PENNSYLVANIA WOULD BE MOST CONVENIENT FOR ALL PARTIES.

An important factor in determining centralization rests on "convenience of parties and witnesses" for the promotion of "the just and efficient conduct of such actions." 28 U.S.C. §1407(a). Generally when possible, the MDL Panel transfers cases to a district where a center of gravity exists, when there is a ***singular*** defendant who is common to all actions, or where a ***plurality*** of defendants and witnesses reside or where relevant documents can be located. *See, e.g.*, *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398. F. Supp. 2d 1371, 1372 (J.P.M.L. 2005); *In re: Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp 2d 1379, 1382 (J.P.M.L. 2011); *In re Union Pac. R.R. Co. Emp. Pracs. Litig.*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004). However, sometimes it is not possible to centralize an MDL because there is no one center point of gravity housing the multiple defendants; for a litigation spanning multiple jurisdictions, it reasons that a central location easily accessible by all parties, regardless of a defendant's headquarters, would be more appropriate. *See, e.g.*, *Am. Med. Collection Agency*, 410 F. Supp. 3d at 1353 (where the MDL panel centralized actions in the District of New Jersey despite fact that the defendant's headquarters were located in New York); *In re Teflon Prods. Liab. Litig.*, 416 F. Supp. 2d 1364, 1365 (J.P.M.L. 2006) (where the MDL Panel concluded that despite "the range of locations of parties and putative class members in this docket and the geographic dispersal of the pending actions" and an "array of suitable transferee districts presents

itself,"[7] the Panel centralized the actions in the District of Iowa); *In re Transit Co. Tire Antitrust Litig.*, 350 F. Supp. 1165, 1166 (J.P.M.L. 1972) (where the Panel centralized "four widely-separated states—Florida, Pennsylvania, California and Missouri" to the Western District of Missouri "[b]ecause of Kansas City's geographically central location, it [was] easily accessible from all parts of the country and provides a more convenient forum to *all* parties"); *In re A. H. Robins Co., Inc. "Dalkon Shield" IUD Prods. Liab. Litig.*, 406 F. Supp. 540 (J.P.M.L. 1975) (it was more appropriate to centralize 57 actions pending in 23 different districts to the District of Kansas because of its geographically central location).

Where, as here, there is no clear center of gravity, the MDL Panel may centralize related actions in a geographically central location. In determining an appropriate venue, the Panel will look at a location that: "i) provides a geographically central location, ii) does not have any other multidistrict litigation dockets, and iii) enjoys general docket conditions permitting the Panel to effect the Section 1407 assignment to a court with the present resources to devote to the pretrial matters that this docket is likely to require." *In re Teflon*, 416 F. Supp. 2d at 1365. OSC is merely a vendor that was used by a wide array of banking institutions or lenders.[8] KeyBank utilized OSC to maintain data of customers' personally identifiable information ("PII"), thus its liability to its customers is at issue, including its determination to use OSC to collect and store sensitive PII.

---

[7]     In *In re Teflon*, actions were filed in the Central District of California, Southern District of California, District of Colorado, Southern District of Florida, Northern District of Illinois, Southern District of Iowa, District of Massachusetts, Eastern District of Michigan, Eastern District of Missouri, Southern District of New York, Northern District of Ohio, Eastern District of Pennsylvania, District of South Carolina, and Southern District of Texas.

[8]     "OSC provides its insurance and risk services to more than 1,200 lenders." Press Release, *Overby-Seawell Company Changes Name to OSC*, BUSINESS WIRE (Nov. 1, 2011), https://www.businesswire.com/news/home/20111101007040/en/Overby-Seawell-Company-Cha nges-Name-to-OSC#:~:text=Today%2C%20OSC%20provides%20its%20insurance,to%20more %20than%201%2C200%20lenders.

First, the Western District of Pennsylvania provides a geographically central location. There are plaintiffs spanning the states of Ohio, New York, Washington, and Oregon. Pittsburgh, where the Western District of Pennsylvania is located, houses the Pittsburgh International Airport[9], which is ranked one of the ten top airports in North America.[10]

Second, each of the proposed Districts currently contain multidistrict litigation dockets. However, as discussed *supra*, the Western District of Pennsylvania presides over the least amount of MDL actions. The Western District of Pennsylvania also presides over the least number of general actions.

Third, as discussed in the Motion and above, the Western District of Pennsylvania enjoys the most favorable dockets conditions that will allow Judge Colville to devote adequate resources that this complex litigation will require.

Movants find the arguments against centralization in the Western District of Pennsylvania to be unconvincing. In favor of the Northern District of Georgia, opposing respondents argue convenience of the parties dictates that a center of gravity is where OSC is headquartered (*see* ECF No. 26 at 3); or that "centralization is most appropriate in [central defendant OSC's home] district" (*see* ECF No. 23 at 6-7); or that by virtue of OSC being a "vital, indispensable, common-to-all" defendant, their location of witnesses and documents are "the most important factors" (*see* ECF

---

[9]  "Pittsburgh International Airport serves more than 8 million passengers annually on 16 carriers with nonstop service to 68 airports. It is a model to other airports due to its successful transition from a mega-hub facility to an origin and destination airport with a growing passenger base, declining costs and innovative terminal design that showcases concessions in a Center Core configuration, simplifies aircraft movement via X-shaped gates, and eases pedestrian traffic to gates." *Pittsburgh International Airport*, IATA, https://www.iata.org/en/about/sp/partners-directory/pittsburgh-international-airport/764/ (last visited Nov. 15, 2022).

[10]  JD Power and Associates ranked PIT as one of the Top 10 Airports in North America. *Pittsburgh Airport*, VISITPITTSBURGH.COM, https://www.visitpittsburgh.com/plan-your-trip/transportation/pittsburgh-airport/#:~:text=JD%20Power%20and%20Associates%3A%20Ranked,and%20Best%20Overall%20Concessions%20Program (last visited Nov. 15, 2022).

No. 25 at 6); or that "witnesses and documents . . . will therefore be located primarily in . . . Georgia." *See* ECF No. 29.  Convenience of parties and witnesses does not necessitate transfer to only where a Defendant or witnesses reside.  In fact, Judge William Terrell Hodges, a former chair of the JPML, noted "the accessibility of the court" as a relevant factor and "courts in the metropolitan areas with busy airports are much more convenient."[11]  The MDL Panel has stated that "normally [there] is no necessity for the parties to participate in pretrial conferences held by the transferee court" because "depositions of the parties and witnesses can be taken in the district in which they reside. See Fed. R. Civ. P. 26(c)(2), 45(d)(2)." *In re Sugar Indus. Antitrust Litig. (E. Coast)*, 471 F. Supp. 1089, 1094 (J.P.M.L. 1979).  Indeed, the *Bozin* respondents stated as much – "[t]he fact that the other Defendants and other Plaintiffs are located outside of the Northern District of Ohio carries little, if any, weight" because "[m]odern day technology" allows the production of documents to be done electronically and "experts can provide their expertise from wherever they reside."  *See* ECF No. 22 at 9.

Centralization necessitates a cost-benefit analysis, where inconvenience and expense caused by transfer is to be balanced against any overall savings from convenience of including all actions in coordinated or consolidated pretrial proceedings.  *Sugar Indus.*, 471 F. Supp. at 1094. No respondent indicated that it would be, for example, too expensive to fly to Pittsburgh, or that their witnesses could not afford to travel.  And in a post-COVID-19 litigious world, technological advances have allowed for virtual depositions, virtual arguments, and virtually transmissible e-Discovery that have materially reduced travel costs.[12]

---

[11]  Gregory Hansel, *Extreme Litigation: An Interview with Judge Wm. Terrell Hodges, Chairman of the Judicial Panel on Multidistrict Litigation*, 19 ME. B.J. 16, 19 (2004).

[12]  *See* Andrew Barron, *Abandoning Centrality: Multidistrict Litigation After COVID-19*, CALIF. LAW REVIEW (Nov. 2020), https://www.californialawreview.org/multidistrict-litigation-after-covid-19/ (last visited Nov. 15, 2022); *see also* James W. Beard & Heather J. Kliebenstein,

An appropriate centralized location will be needed when this litigation advances, because discovery and information will emanate from a wide array of institutions. This litigation is not limited to OSC. Rather, it was OSC as a vendor providing services to KeyBank and their customers. As a vendor, OSC worked as a provider harboring PII data belonging to the customers of KeyBank, and other entities. Thus, based on a data breach that affects KeyBank and its customers, the *Plaintiffs* require a just and efficient outcome. The convenience of parties and witnesses for the promotion of the just and efficient conduct of such actions will therefore require a central location that is accessible by *all* witnesses, defendants, and interested parties (not just what is convenient for a Defendant). It reasons then that the Western District of Pennsylvania is the most centrally located venue that would allow all currently pending actions to centralize for the sake of efficiency.

### D. THE WESTERN DISTRICT OF PENNSYLVANIA IS EXPERIENCED IN SUCCESSFULLY MANAGING MULTIDISTRICT LITIGATION AND JUDGE ROBERT J. COLVILLE HAS SUBSTANTIAL RELEVANT KNOWLEDGE.

The Western District of Pennsylvania is a capable destination for the management of this matter, both in its centrally convenient location and favorable docket statistics. This Panel has also recently recognized the Western District of Pennsylvania as an efficient and capable choice for complex litigation and class actions. *In re Erie COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2969, 509 F. Supp. 3d 1370, 1374 (J.P.M.L. 2020) ("Pittsburgh represents an accessible forum with the capacity to efficiently manage these cases."). The Western District of Pennsylvania also had ample experience in MDL cases and major complex class action litigation. *See, e.g.*, *In*

---

*INSIGHT: How Covid-19 Changed the Future of Litigation*, BLOOMBERG.COM (May 7, 2020), https://news.bloomberglaw.com/us-law-week/insight-how-covid-19-changed-the-future-of-litigation.

9

*re All-Clad Metalcrafters, LLC, Cookware Mktg. & Sales Pracs. Litig.*, No. MDL 2988, 2021 WL 1221526 (J.P.M.L. 2021); *In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018); *In re Railway Indus. Emp. No-Poach Antitrust Litig.*, MDL No. 2850, 326 F. Supp. 3d 1381, 1382 (J.P.M.L. 2018).

Moreover, Judge Robert J. Colville is an experienced judge. Prior to joining the Federal Bench in 2019, Judge Colville was a State Court Judge for nineteen years. Since joining the Western District of Pennsylvania, Judge Colville has presided over 52 class actions, ranging from labor and employment to contracts. Although Judge Colville has not yet managed an MDL, the average number of MDLs of a transferee judge is 1.37.[13] This Panel should consider Judge Colville as he has the general experience to otherwise provide a just and efficient outcome in this pending matter.

## III.   CONCLUSION

For the foregoing reasons, Movants respectfully request that the Panel transfer the Related Actions and any subsequent tag-along actions to the Western District of Pennsylvania for coordinated or consolidated pretrial proceedings before Judge Colville.

Dated: November 15, 2022                    Respectfully submitted,

                                            **SCOTT+SCOTT ATTORNEYS AT LAW LLP**


                                             */s/ Joseph P. Guglielmo*
                                            Joseph P. Guglielmo
                                            The Helmsley Building
                                            230 Park Avenue, 17th Floor
                                            New York, NY 10169

---

[13]   Daniel A. Richards, *An Analysis of the Judicial Panel on Multidistrict Litigation's Selection of a Transferee District and Judge*, 78 FORDHAM L REV. 311 (2009), https://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=4496&context=flr.

Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com

***Counsel for Plaintiff Movants Karen Martin and Michael Martin***